# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**LEONARD TSOSIE, as Personal**
**Representative of the Estate of**
**Nettie Ann Tsosie; and Leonard**
**Tsosie, et al.**,

      Plaintiffs,

      vs.                                        No. **CIV 02-1411 MCA/RHS**

**THE UNITED STATES OF AMERICA,**

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendant's Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) or, in the Alternative, Motion for Summary Judgment Pursuant to Fed.R.Civ.P. 56*, (Doc. 33), filed December 18, 2003. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court finds that the motion is due to be granted in part and denied in part.

## BACKGROUND

Plaintiff [1] Leonard Tsosie is an enrolled member of the Navajo Nation who resides on the Navajo Nation in St. Michaels, Arizona. Plaintiff also is the widower of decedent Nettie Ann Tsosie and the personal representative of her estate. (Doc. 1 at unnumbered 1-2).

---

[1] Alberta Capitan and Larry, Jimmie, and Thomas Tsosie are decedent's children and also are plaintiffs in this case. (See Doc. 1 at 2).

On June 1, 2000, Nettie Ann Tsosie presented at the Fort Defiance Indian Hospital in Fort Defiance, Arizona, complaining of a sore throat and complete and continuing body aches. After being diagnosed with, among other things, acute pharyngitis and acute rhinosinusitis, Ms. Tsosie was sent home in good condition. (Id. at unnumbered 2). The next day, Ms. Tsosie presented at the Gallup Indian Medical Center (GIMC) with similar complaints. She was again diagnosed, given prescriptions for several medications, and sent home. (Id.). On June 4, 2000, Ms. Tsosie went to the GIMC emergency room and saw Obafemi Opesanmi, M.D. (Doc. 34 at 2). After she informed him of her previous hospital visits and he reviewed the results of blood tests, an abdominal x-ray, and a stool culture, Dr. Opesanmi diagnosed Ms. Tsosie with acute gastroenteritis, mild dehydration, and hypoedema and sent her home to continue the prescribed course of medication. (Doc. 1 at unnumbered 3). On June 5, 2000, Ms. Tsosie went to the emergency room at the Rehoboth McKinley Christian Hospital, where she was diagnosed with acute respiratory failure and suspected hantavirus and immediately transported to Albuquerque, New Mexico. Ms. Tsosie died June 5, 2000. (Id.).

Pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 (FTCA), Plaintiff now sues Defendant United States of America, as owner and operator of GIMC, for the negligence of its employee, Dr. Opesanmi, in failing to suspect that Ms. Tsosie was suffering from hantavirus and to test and treat her for that illness. (Doc. 1 at unnumbered 3-4). For purposes of its motion to dismiss, Defendant concedes that Dr. Opesanmi provided substandard care. (Doc. 34 at 19). Defendant argues, however, that this Court is without jurisdiction over the matter because Dr. Opesanmi, who provided services to GIMC under

a contract executed between Defendant and Medical Doctor Associates, Inc. (MDA), was an independent contractor, rather than a federal employee, at the time of the acts in question, and therefore Defendant cannot be held liable under the FTCA. (See Doc. 33; Doc. 34 Exh. A at 3).

**ANALYSIS**

Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally take two forms. Holt v. U.S., 46 F.3d 1000, 1002 (10th Cir. 1995). The first, a facial attack on the complaint's allegations as to subject-matter jurisdiction, questions the sufficiency of the complaint and requires the district court to accept as true the allegations set forth therein. Id. (internal citation omitted). Alternatively, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject-matter jurisdiction depends. Id. at 1003. When reviewing a factual attack on subject-matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. Id. Indeed, a court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1) without converting the motion to a Rule 56 motion for summary judgment. On the other hand, a Rule 12(b)(1) motion should be treated as a Rule 56 motion when resolution of the jurisdictional question is intertwined with the merits of the case. See id.; see also Redmon v. United States, 934 F.2d 1151, 1155 (10th Cir.1991). "The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." Wheeler v. Hurdman, 825 F.2d 257, 259 n. 5 (10th Cir.), cert. denied,

484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987).

Dismissal of a complaint under Fed.R.Civ.P. 12(b)(6) is appropriate only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir.1997) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir.1991). Accordingly, all well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party. GFF Corp., 130 F.3d at 1384.

"In addition to the complaint, the . . . court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002). Thus, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." GFF Corp., 130 F.3d at 1384. The Court "'may also take judicial notice of matters of public record' without converting a 12(b)(6) motion into a motion for summary judgment." Henson v. CSC Credit Servs., 29 F.3d 280, 284 (7th Cir. 1994).

Summary judgment under Fed. R. Civ. P. 56(c) "shall be rendered forthwith if the

4

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ." Fed. R. Civ. P. 56(e). Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Id. Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

### A. Whether Dr. Opesanmi was an Employee or an Independent Contractor

The FTCA provides a limited waiver of sovereign immunity, allowing the United States to be sued for damages arising from torts committed by government employees acting within the scope of their employment. Curry v. U.S., 97 F.3d 412, 414 (quoting 28 U.S.C. § 1346(b)). While "employees" of the government include officers and employees of federal agencies, "federal agencies" do not include contractors. Id. (quoting 28 U.S.C.§ 2671). The FTCA does not authorize suits based on the acts of independent contractors or their employees. Id. (citations omitted).

In determining whether an individual is to be accorded federal-employee or independent-contractor status, "the critical question is whether the federal government has the power to control the detailed physical performance of the individual." Duplan v. Harper,

5

188 F.3d 1195, 1200 (10th Cir. 1999). The "control test" turns on whether the government supervises the individual's day-to-day operations. Id. Where, however, the individual is a physician, the test is necessarily subject to the physician's medical and ethical obligations. Lilly v. Fieldstone, 876 F.2d 857, 859 (10th Cir. 1989). Accordingly, in such cases, courts must look to other evidence for the manifestation of an intent to make the physician subject to other forms of permissible control. Id. Such evidence includes the intent of the parties, the allocation of insurance and tax obligations, whether the government or the physician provides the equipment needed to perform the job, and whether the government controls only the end result of the physician's activities or also controls the manner and method by which the activities are conducted. Duplan, 188 F.3d at 1200; Lilly, 876 F.2d at 859.

After carefully weighing the applicable factors, the Court finds that Dr. Opesanmi must be deemed an independent contractor. As demonstrated by the plain language of "Indefinite Delivery Indefinite Quantity Contract No. 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," Defendant and MDA clearly intended for Dr. Opesanmi to be considered an independent contractor, rather than an employee. (See generally Doc. 34, Attachment 1; see also Doc. 41, Exh. I). Specifically, the Court notes Section I-8, 52.237-7, "Indemnification and Medical Liability Insurance," which provides, in pertinent part, that

> [i]t is expressly agreed and understood that this is a nonpersonal services contract, . . . under which the professional services rendered by the Contractor are rendered in its capacity as an independent contractor. The Government may evaluate the quality of professional and administrative services provided, but retains no control over professional aspects of the services rendered, including by example, the Contractor's professional medical judgment, diagnosis, or specific medical treatments.

6

(Id. at Section I-8, 52.237-7). Because, as discussed above, the control test cannot be determinative in the case of a physician, the Court also has considered that Contract No. 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 provides that (1) MDA assumes sole liability for and expressly agrees to indemnify Defendant with respect to liability-producing acts or omissions of its agents and employees, (2) the contractor is responsible for maintaining adequate liability insurance, and (3) the contractor assumes financial responsibility for withholding and Social Security taxes, unemployment insurance, and workers' compensation. (Id. at Section I-8, 52.237-7; Section C-10).[2]

Plaintiff contends that Dr. Opesanmi's status as a federal employee also is demonstrated by the fact that he was required to be credentialed, as well as monitored and supervised on a daily basis, in the same manner as staff physicians. (See Doc. 35 at 16-18). The Court believes, however, that Defendant may take steps to guarantee the quality of provider services without converting the provider from independent contractor to employee. See Duplan, 188 F.3d at 1201 (government's insistence that contract physicians meet minimum qualifications and its decision to review physicians' performance "amounts to nothing more than a standard quality assurance [provision] by which the government reserves the right to determine whether it is satisfied with the services it is purchasing under the

---

[2] The Court has considered Plaintiff's argument that Dr. Opesanmi's status as a nonsignatory to Contract No. 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 should be factored into the determination of whether Dr. Opesanmi was an employee or an independent contractor. (See Doc. 35 at 13-15). In light of Circuit precedent, however, the Court is not persuaded. See generally Lurch v. U.S., 719 F.2d 333 (10th Cir. 1983); In re Estate of Kout v. U.S., 241 F.Supp.2d 1183 (D.Kan. 2002).

contract." (quotation omitted)). Neither is the Court convinced that Defendant's having informed Dr. Opesanmi to be alert to the presence of hantavirus evidenced an attempt to supervise Dr. Opesanmi's day-to-day activities at GIMC. See id. n.1; see also Doc. 34, Exh. B at 22; Doc. 35 at 17. Finally, that Defendant provided equipment for Dr. Opesanmi's use and required that he attend staff meetings at GIMC and work scheduled shifts, especially when balanced against the above-discussed factors, are insufficient to support a finding that Dr. Opesanmi was an employee, as opposed to an independent contractor. See Duplan, 188 F.3d at 1201 (concluding that government's provision of equipment and office space and requirement that physician work designated hours did not, when weighed against competing factors, establish that physician was government employee).

### B. Whether Defendant is Estopped from Denying Dr. Opesanmi's Status as a Federal Employee

Plaintiff next argues that Defendant should be estopped from denying that Dr. Opesanmi was a federal employee at the time he treated Ms. Tsosie. (Doc. 35 at 6, 19-22).

In order to sustain a claim of estoppel against the federal government in this Circuit, a plaintiff must satisfy the following requirements:

> (1) the party to be estopped must know the facts; (2) he must intend that his conduct will be acted upon or must so act that the party asserting the estoppel has the right to believe that it was so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

Lurch, 719 F.2d at 341 (quoting Home Savings & Loan Ass'n v. Nimmo, 695 F.2d 1251, 1254 (10th Cir.1982)). Additionally, the party asserting the estoppel claim must show that the government engaged in some sort of affirmative misconduct. Id. n.12 (citing INS v.

Miranda, 459 U.S. 14 (1982) (per curiam); Schweiker v. Hansen, 450 U.S. 785 (1981) (per curiam); INS v. Hibi, 414 U.S. 5 (1973) (per curiam).

According to Plaintiff, Dr. Opesanmi did not inform Ms. Tsosie on June 4, 2000, that he was not a government physician or wear some sort of identification badge to alert her to the fact that he was not an employee of GIMC. (See Doc. 35 at 20-21; Exh. 8). Assuming without deciding that Plaintiff has satisfied the above four elements for establishing a claim of estoppel against Defendant, the Court does not find that Plaintiff has demonstrated affirmative misconduct by Defendant. See In re DePaolo, 45 F.3d 373, 377 (10th Cir. 1995) (in bankruptcy case, explaining that "[a]ffirmative misconduct is a high hurdle for the asserting party to overcome[,]" defining the term "affirmative misconduct" as "an affirmative act of misrepresentation or concealment of a material fact[,]" and stating that "[m]ere negligence, delay, [or] inaction . . . does not constitute affirmative misconduct" (citations omitted)). Consequently, the Court is constrained to conclude that Plaintiff has not satisfied the elements necessary to establish a traditional claim of estoppel.

### B(1). The Special Trust Relationship Between the Federal Government and Native Americans

The Court has found that Plaintiff cannot prevail under the traditional doctrine of estoppel. However, Plaintiff asserts that "in light of the United States' trust responsibility to provide health care to Native Americans, the United States should be estopped from arguing that Dr. Opesanmi was an independent contractor at the time he treated Mrs. Tsosie

9

on June 4, 2000." (Doc. 35 at 6). Plaintiff does not claim overt misconduct on the part of Defendant; rather, Plaintiff appears to urge the Court to find that the unique trust (fiduciary) relationship between Native Americans and the federal government, specifically with respect to the government's provision of health care and related services to Native Americans, is, in and of itself, sufficient to establish an affirmative duty on the part of the government to undertake responsibility for the acts and omissions of a physician (such as Dr. Opesanmi) who might otherwise be deemed an independent contractor. (See generally id. at 19-22). The Court invites further briefing on the issue of the government's specific duty and breach in this case. See e.g. Pueblo of Santa Ana v. Kelly, 932 F.Supp. 1284,1299 (D.N.M. 1996), aff'd, 104 F.3d 1546 (10th Cir.), cert. denied, 522 U.S. 807 (1997).

### C. The Applicability of 25 U.S.C. § 1680c(d)

Finally, Plaintiff argues that, in enacting the Indian Health Care Improvement Act, Congress has manifested an intent that physicians such as Dr. Opesanmi be afforded the protections of the FTCA. (Doc. 35 at 22). Plaintiff points specifically to 25 U.S.C. § 1680c(d), which states:

> (d) Extension of hospital privileges to non-Service health care practitioners
>
> Hospital privileges in health facilities operated and maintained by the Service or operated under a contract entered into under the Indian Self-Determination Act [25 U.S.C.A. § 450f et seq.] may be extended to non-Service health care practitioners who provide services to persons described in subsection (a) or (b) of this section. Such non-Service health care practitioners may be regarded as employees of the Federal Government for purposes of section 1346(b) and chapter 171 of Title 28 (relating to Federal tort claims) only with respect to acts or omissions which occur in the course of providing services to eligible persons as a part of the conditions under which such hospital privileges are

10

extended.

25 U.S.C. § 1680c(d). Defendant counters, in part, that this statutory section is inapplicable under the circumstances because "Dr. Opesanmi had not been granted hospital privileges since he was not authorized to admit patients to the hospital nor care for patients in the hospital." (Doc. 41 at 14). In support, Defendant has attached testimony from two GIMC physicians explaining that Dr. Opesanmi had no hospital privileges. (Id., Exhs. G, H). The Court, however, concludes that additional briefing on the distinction between "hospital" privileges and the privileges Dr. Opesanmi was granted would assist the Court in its resolution of the issue of the applicability of 25 U.S.C. § 1680c(d). Accordingly, the Court will afford Plaintiff the opportunity to conduct limited discovery as requested, and argument. (See Doc. 35 at 23).

**IT IS, THEREFORE, ORDERED** that *Defendant's Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) or, in the Alternative, Motion for Summary Judgment Pursuant to Fed.R.Civ.P. 56*, (Doc. 33), is **GRANTED IN PART** and **DENIED IN PART**. The *Motion* is granted as to the issues of (1) Dr. Opesanmi's status as an employee or independent contractor and (2) estoppel.

**IT IS FURTHER ORDERED** that the Pretrial Conference in this matter, scheduled for May 4, 2004, is hereby **VACATED.**

**IT IS FURTHER ORDERED** that the Trial in this matter, scheduled for June 15, 2004, is hereby **VACATED.**

**IT IS FURTHER ORDERED** that Plaintiff's brief on the issue of the special trust relationship between the federal government and Native Americans with respect to the provision of health care, as addressed in Part B(1) above, shall be due not later than May 13, 2004; Defendant's response shall be due no later than May 27; and Plaintiff's reply, if any, shall be due no later than May 31.

**IT IS FURTHER ORDERED** that the parties shall have completed discovery on the issue of the applicability of 25 U.S.C. § 1680c(d) no later than May 28, 2004; Plaintiff's brief on this issue shall be due no later than June 9, 2004; Defendant's response shall be due no later than June 21, 2004; and Plaintiff's reply, if any, shall be due no later than June 28, 2004.

**SO ORDERED** this 28th day of April, 2004, in Albuquerque, New Mexico.

                                                  **M. CHRISTINA ARMIJO**
                                                  United States District Judge